```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

SLATTEN, LLC, et al.                          CIVIL ACTION

VERSUS                                        NO: 13-673

ROYAL CARIBBEAN CRUISES LTD.,                 SECTION: R(5)
et al.
```

                          **ORDER AND REASONS**

Third-party defendants Beverley Navigation, Inc. and Pleiades Shipping Agents, S.A. (collectively, "Beverley") move for summary judgment on all claims against them.[1] Defendant Royal Caribbean Cruises Ltd. ("Royal Caribbean") and third-party defendants United Bulk Terminals Davant, LLC ("UBT") and Marquette Transportation Company Gulf-Inland, LLC ("Marquette") oppose the motion.[2] For the following reasons, the Court DENIES Beverley's motion.

**I.   Background**

This consolidated maritime action arises out of a breakaway incident on the lower Mississippi River in the early morning hours of January 26, 2013. Before the breakaway, the tugboat ALLISON S was moored to a number of Marquette's barges at UBT's fleeting facility in Davant, Louisiana. Sometime after 3:00 A.M., the barges and the ALLISON S broke loose from their mooring and

---

[1] R. Doc. 66.

[2] R. Docs. 72, 74, 75.

drifted downstream. The ALLISON S allided with the anchored vessel HIGH STRENGTH. It sustained damage and its crew allegedly suffered personal injuries. In addition, several of the breakaway barges struck and damaged an anchored barge belonging to Bouchard Transportation Co., Inc. ("Bouchard").

The parties dispute the cause of the breakaway. Slatten, LLC, the owner of the ALLISON S, and Bisso Towboat Company, Inc., the owner *pro hac vice* of the ALLISON S (collectively, "Slatten"), commenced this action against defendant Royal Caribbean.[3] Slatten alleges that Royal Caribbean's cruise ship, the NAVIGATOR OF THE SEAS ("NAVIGATOR"), was operating in the Mississippi River; that it overtook the NESTOS, an oil tanker owned and/or operated by Beverley, in the area of UBT's fleeting facility; that the NAVIGATOR traveled at a speed greater than 14 knots as it overtook the NESTOS; and that the wake and suction that the NAVIGATOR generated as it passed the fleeting facility caused the breakaway.[4]

Royal Caribbean made UBT, Marquette and Beverley third-party defendants to Slatten's claims, under Federal Rule of Civil Procedure 14(c).[5] Royal Caribbean alleges that the breakaway was caused by the negligence of UBT and/or Marquette in failing to

---

[3] R. Doc. 1.

[4] *Id.* at 3.

[5] R. Docs. 10, 15.

provide adequate moorings to secure the fleet.[6] It further argues that, to the extent that wake and suction generated by the NAVIGATOR contributed to the breakaway, Beverley, too, is liable, because wake and suction from the NESTOS, as well as "the actions of the NESTOS," were contributing causes.[7]

Bouchard filed a separate suit against Royal Caribbean and UBT, alleging liability for damage to its barge.[8] The Court consolidated Bouchard's suit with Slatten's suit.[9] Royal Caribbean then made Marquette, Slatten and Beverley third-party defendants to Bouchard's claims, under Rule 14(c).[10]

Approximately three months later, three crew members of the ALLISON S intervened in the suit.[11] They allege that Royal Caribbean is liable for injuries they suffered when the ALLISON S allided with the HIGH STRENGTH.[12] Royal Caribbean made Slatten, UBT, Marquette and Beverley third-party defendants to the crew members' claims, under Rule 14(c).[13]

---

[6] R. Doc. 10 at 5-6.

[7] *Id.* at 6-7.

[8] *Bouchard Transportation Co., Inc. v. Royal Caribbean Cruises Ltd.*, No. 13-4975, R. Doc. 1.

[9] R. Doc. 21.

[10] R. Doc. 32 at 8-9.

[11] R. Doc. 61.

[12] *Id.*

[13] R. Doc. 62 at 7-8.

Beverley moves for summary judgment on all claims against it. It argues that "[t]he evidence fully supports that the actions of the navigators aboard the NESTOS at the time of the incident were neither negligent, nor did they contribute to the barge breakaway which is the subject of this suit."[14] Only Royal Caribbean, UBT and Marquette oppose the motion.

## II. Summary Judgment Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-399 (5th Cir. 2008). The Court must draw reasonable inferences in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)

---

[14] R. Doc. 66 at 1.

4

(quoting 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2738 (2d ed. 1983)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quotation marks removed). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.

The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *Id.; see also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and

5

upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (quoting *Celotex*, 477 U.S. at 322).

### III. Discussion

*A. The Court Considers the Oppositions to Summary Judgment Filed by Third-Party Co-Defendants UBT and Marquette.*

As an initial matter, Beverley argues that the Court should decline to consider UBT's and Marquette's oppositions to Beverley's summary judgment motion, "as these two parties have simply failed to assert any claims against [Beverley]."[15] "While some courts have precluded co-defendants without crossclaims from filing oppositions to a co-defendant's motion for summary judgment, others have considered a co-defendant's opposition." *Edwards v. Permobil, Inc.*, No. 11-1900, 2013 WL 4094393, at *1 n.2 (E.D. La. Aug. 13, 2013) (citations removed). "[T]he Fifth Circuit has implicitly recognized that parties between whom no formal claims have been filed are considered adverse in the context of a motion for summary judgment." *Helen of Troy, L.P. v. Zotos Corp.*, 235 F.R.D. 634, 640 (W.D. Tex. 2006) (citing *John Hancock Mut. Life Ins. Co. v. Johnson*, 736 F.2d 315, 316 (5th Cir. 1984)). This Court recently elected to consider an

---

[15] R. Doc. 82 at 4-5.

opposition to summary judgment filed by the movant's co-defendant, even though the co-defendant had filed no claim against the movant. *Edwards*, 2013 WL 4094393, at *1 n.2. In light of this precedent, the Court here considers the oppositions filed by UBT and Marquette.[16]

B.  *Beverley Might Be Contributorily Liable for Injury Resulting From the Breakaway.*

Beverley argues that it is entitled to summary judgment, because the NESTOS could not have generated the wake and suction that allegedly caused the breakaway and because the crew of the NESTOS was not negligent in navigating the vessel.[17] The parties opposing summary judgment submit evidence disputing these claims. The Court finds that this evidence is sufficient to establish a genuine issue for trial as to whether Beverley was contributorily negligent, on at least two theories.

---

[16] Beverley also argues that, because Slatten, Bouchard and the intervening crew members have not filed oppositions to its motion for summary judgment, "the motion should be granted at least in part with respect to [Beverley's] potential liability as a direct defendant under Rule 14(c)." R. Doc. 82 at 4. For the reasons detailed in this order, the Court finds that the oppositions filed by Royal Caribbean, UBT and Marquette establish genuine questions for trial as to all claims against Beverley. Thus, the Court concludes that Beverley is not entitled to summary judgment whether as a direct defendant or a third-party defendant.

[17] R. Doc. 66-1 at 4-8, 11-16.

First, Beverley may be liable if the NESTOS generated an excessive swell that caused the breakaway, and this swell resulted from negligent operation of the vessel. *Gregg v. Weeks Marine, Inc.*, No. 99-1586, 2000 WL 798493, at *4 (E.D. La. June 21, 2000). Beverley argues that it cannot be liable on this ground, because the NESTOS was traveling along the side of the river opposite the fleeting facility, the NAVIGATOR passed closer to the fleeting facility as it overtook the NESTOS, and the NAVIGATOR was traveling at a faster speed than the NESTOS.[18] Thus, Beverley argues, any wake or suction causing the breakaway must have come from the NAVIGATOR and not the NESTOS.

Royal Caribbean offers expert opinion evidence countering this argument. It offers a declaration from Christopher Karentz, a maritime consultant with approximately thirty years' experience in marine operations,[19] who suggests that wake and suction from the NESTOS was a more likely cause of the breakaway than wake and suction from the NAVIGATOR. Karentz states that, based on his review of Coast Guard Automatic Identification System data, "[t]he first definitive signs of movement by the ALLISON S occur during the passage of the NESTOS."[20] Further, he states that "[t]he hydrodynamic behavior of the NAVIGATOR OF THE SEAS and the

---

[18] *Id.* at 12.

[19] R. Doc. 72-1; *see* R. Doc. 79-3.

[20] *Id.* at 2.

NESTOS are drastically different. . . . The NAVIGATOR offers little resistance to the water while traveling at any speed, as opposed to the NESTOS which travels through the water analogous to a brick due to the significant suction, surge and wake resulting from its deep draft and hull design."[21] These observations are consistent with the deposition testimony of Robert Johnson, the captain of the NESTOS at the time of the breakaway. Johnson states that the NAVIGATOR, which he has piloted in the past, "has a slight, slight wake" and doesn't generate "much of a surge."[22] Karentz concludes that if "suction, surge, or wake caused the subject breakaway, such would more probably than not be attributable to the NESTOS regardless of its distance from the ALLISON S and subject UBT barges."[23]

Further, Johnson's deposition indicates that the area where the UBT facility is located, known as the "coal hole,"[24] is a sensitive pass at which vessels typically slow down, but that the NESTOS did not slow down when it reached the coal hole.[25] The Court finds that Karentz's declaration, together with Johnson's

---

[21] *Id.* at 6.

[22] R. Doc. 72-2 at 9; *see also id.* at 10 ("[T]he way [the NAVIGATOR] is built, you know, it is not deep in the water, it just kind of glides on the top.").

[23] R. Doc. 72-1 at 7.

[24] R. Doc. 74-4 at 4.

[25] *Id.* at 2, 5-6, 7, 15-16.

deposition testimony, creates a genuine issue of fact as to whether swells from the NESTOS caused the breakaway and whether the NESTOS was traveling at an excessive speed through the coal hole. *See id.* ("It is well established that a presumption of fault arises when . . . [a vessel's] wake causes damage to a moored or anchored vessel.").

Second, Beverley may be liable if the NESTOS acted unreasonably, or violated a safety statute, in making and/or executing passing arrangements with the NAVIGATOR. *See* 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 14-2 (5th ed. 2013). "The test and standard for a finding of negligence is reasonable care under the circumstances, or whether judged against the standard of good and prudent seamanship, the collision could have been prevented by the exercise of due care." *Id.* Further, Rule 2 of the Inland Navigation Rules requires vessels to give "due regard . . . to all dangers of navigation and collision and to any special circumstances" and to take action "necessary to avoid immediate danger." 33 C.F.R. § 83.02; *see also* 33 C.F.R. § 83.05 (Rule 5) ("Every vessel shall at all times maintain a proper look-out . . . so as to make a full appraisal of the situation and of the risk of collision.").

Royal Caribbean, UBT and Marquette point to testimony suggesting that the NESTOS was negligent, or in violation of safety statutes, and that its conduct contributed to the

breakaway at UBT's facility. First, Johnson, the NESTOS's pilot, testified that he and other pilots "always cut back" (*i.e.*, slow down) when they pass through the coal hole, and that if he had been piloting the NAVIGATOR through that area, he would have slowed down, so as not "to blow out the fleet."[26] Second, Kevin McNeely, the captain of the NAVIGATOR, testified that before the vessels reached the coal hole he radioed Johnson and told him the NAVIGATOR was catching up to the NESTOS and would be overtaking it eventually.[27] Johnson replied, "Let me know when you start coming up on me, and I will start cutting it back."[28] Third, McNeely testified that he was concerned about passing the NESTOS within the coal hole,[29] so he asked Johnson, "Do you want me to stay behind you until we get through Davant [*i.e.*, beyond the coal hole]?"[30] Johnson replied, "No, come on."[31] Fourth, although the NESTOS moved over to one side of the river to allow the NAVIGATOR to overtake it in the coal hole, it did not slow down.[32]

---

[26] *Id.* at 5-6, 15-16.

[27] R. Doc. 72-3 at 2.

[28] *Id.* at 5.

[29] *Id.* at 7.

[30] R. Doc. 72-2 at 5; R. Doc. 72-3 at 7.

[31] R. Doc. 72-2 at 5; R. Doc. 72-3 at 2-3, 7.

[32] R. Doc. 72-2 at 3-4; R. Doc. 74-4 at 7.

The Court finds that this evidence suggests that, even if the NAVIGATOR generated the wake and suction allegedly causing the breakaway, the NESTOS could still have been negligent or in violation of statutory safety rules. Specifically, it might have been at fault for encouraging the NAVIGATOR to overtake it in the coal hole and for failing to slow down as it had indicated it would, thus requiring the NAVIGATOR to maintain a greater speed in order to overtake it.[33] *Cf. Union Oil Co. of Ca. v. M/V Issaquena*, 470 F.2d 875, 876-77 (5th Cir. 1973) (captain of vessel being overtaken was negligent for failing to dissent from passing, since he conceded it was unsafe for overtaking vessel to attempt to pass him); Frank E. Bassett & Richard A. Smith, *Farwell's Rules of the Nautical Road* 253-54 (6th ed. 1982) ("[I]n the face of apparent danger, it is [the overtaken vessel's] duty to prohibit the passage by sounding the prescribed danger signal, and if she assents instead, she will also be held at fault.").

Beverley argues that the NESTSOS was not at fault for failing to slow down, because the Inland Navigation Rules mandate that a vessel being overtaken "keep her course and speed."[34] 33 C.F.R. § 83.17. It further argues that it cannot be liable for

---

[33] *See* R. Doc. 72-1 at 4 (declaration of Christopher Karentz) ("At this point, Captain Johnson should have began to 'cut back' as originally planned as Captain McNeely had let him know that the NAVIGATOR would begin its overtaking.").

[34] R. Doc. 82 at 10.

12

Johnson's conduct encouraging the NAVIGATOR to overtake the NESTOS in the coal hole, because Rule 13 of the Inland Navigation Rules obliges the overtaking vessel, not the vessel being overtaken, "to select a safe place to overtake another vessel in the first instance."[35] *Otal Investments Ltd. v. M.V. Clary*, 494 F.3d 40, 54 (2d Cir. 2007); *but see* 33 C.F.R. § 83.13 (Rule 13) (not explicitly putting the burden to select a safe place for passage on the overtaking vessel exclusively).

These arguments are unavailing. Inland Navigation Rule 2 states that "[n]othing in these Rules shall exonerate any vessel, or the owner, master, or crew thereof, from the consequences . . . of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the practical circumstances of the case." 33 C.F.R. § 83.02(a); *see* Bassett & Smith, *supra*, at 305 ("[Rule 2] warns against too rigid an interpretation of the rules."). The record raises a genuine question whether the NESTOS was negligent, or in violation of the statutory requirement to pay due regard to all dangers of navigation, in affirmatively encouraging the NAVIGATOR to overtake it in the coal hole and in failing to slow down when the NAVIGATOR began to overtake it. Although the Inland Navigation Rules generally put the responsibility for safe passage on the overtaking vessel, the Court finds that there is a genuine

---

[35] *Id.* at 9.

triable issue whether the NESTOS assumed partial responsibility for the passage by selecting the location for it and by offering to slow down. *Cf. Canal Barge Co., Inc. v. China Ocean Shipping Co.*, 770 F.2d 1357, 1361 (5th Cir. 1985) ("Even when the custom prevails, pilots of approaching vessels may agree to pass in some fashion other than the manner provided by habitual practice.").

Since the Court finds that there are genuine questions of fact whether swells from the NESTOS contributed to the breakaway and whether the NESTOS was at fault in reaching and/or executing passing arrangements with the NAVIGATOR, summary judgment is not warranted at this time.

## IV. Conclusion

For the foregoing reasons, the Court DENIES Beverley's motion for summary judgment.

New Orleans, Louisiana, this __22nd__ day of August, 2014.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

14