UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SLATTEN, LLC, et al.                    CIVIL ACTION


VERSUS                                  NO: 13-673


ROYAL CARIBBEAN CRUISES LTD.,           SECTION: R(5)
et al.

## ORDER AND REASONS

Before the Court are four motions in limine to exclude expert testimony offered by Royal Caribbean Cruises Ltd. ("Royal Caribbean"). Marquette Transportation Company Gulf-Inland, L.L.C. ("Marquette") moves the Court to exclude the opinions of three experts retained by Royal Caribbean.[1] Beverley Navigation, Inc. and Pleiades Shipping Agents, S.A. (collectively, "Beverley") move to exclude the testimony of one of Royal Caribbean's experts.[2] For the following reasons, Marquette's motions are GRANTED in part and DENIED in part. Beverley's motion is DENIED.


**I. Background**

This consolidated maritime action arises out of a breakaway incident on the lower Mississippi River, the details of which are discussed elsewhere.[3]

---

[1]  R. Docs. 108, 111, and 112.

[2]  R. Doc. 114.

[3]  *See* R. Doc. 98.

Marquette now moves to exclude all or part of the testimony of three experts offered by Royal Caribbean: Arthur Sargent,[4] Christopher Karentz,[5] and Jason Fernandes.[6]  Beverley also moves to exclude part of the testimony of Karentz.[7]


**II. Legal Standard**

Federal Rule of Evidence 702, which governs the admissibility of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  A district court has considerable discretion to admit or exclude expert testimony under the Federal Rules of Evidence.  *See General Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

---

[4]    R. Doc. 108.

[5]    R. Doc. 111.

[6]    R. Doc. 112.

[7]    R. Doc. 114.

In *Daubert v. Merrell Dow Pharmaceuticals*, the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."  509 U.S. 579, 589 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (clarifying that the *Daubert* gatekeeping function applies to all forms of expert testimony).  The Court's gatekeeping function thus involves a two-part inquiry into reliability and relevance.

First, the Court must determine whether the proffered expert testimony is reliable.  The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.  *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).  The reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid.  *See Daubert*, 509 U.S. at 592-93.  The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.  *See id.* at 590.  The Court in *Daubert* articulated a flexible, non-exhaustive, five-factor test to assess the reliability of an expert's methodology.  These factors include: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and

controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Id.* at 593-95.

Second, the Court must determine whether the expert's reasoning or methodology is relevant. The question here is whether the reasoning or methodology "fits" the facts of the case and will thereby assist the trier of fact to understand the evidence. *See id.* at 591.

In addition to requiring relevant and reliable opinions, Rule 702 also requires that an expert be properly qualified. In assessing an expert's qualifications, the Court's gatekeeping function does not replace the traditional adversary system. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). "As long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gatekeeping function. After that, qualifications become an issue for the trier of fact, rather than for the court in its gate-keeping capacity." *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999); *see also United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996). A witness qualified as an expert is not strictly confined to his area of practice, but may testify concerning related applications;

4

"a lack of specialization does not affect the admissibility of the opinion, but only its weight." *Wright v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991).

The Fifth Circuit has stated, however, that most of the safeguards provided for in *Daubert* are not as essential when, as here, the Court sits as the trier of fact in place of a jury. *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). This is because, in a bench trial, "there is no risk of tainting the trial by exposing a jury to unreliable evidence." *Whitehouse Hotel Ltd. P'ship v. C.I.R.*, 615 F.3d 321, 330 (5th Cir. 2010).

## III. Marquette's Motion to Exclude Testimony Regarding Fleet Boat Operations by Arthur Sargent

Arthur Sargent is a naval architect and marine engineer retained by Royal Caribbean.[8]  He opines that UBT's mooring equipment was of insufficient strength or inadequate design, UBT's fleeting personnel did not regularly inspect or properly maintain the mooring equipment, UBT failed to moor only raked barges at the head of a block, the presence of the ALLISON S created additional drag, and UBT's use of ING 5534 as a spar barge "presented unusual securing conditions which were not properly addressed by the UBT Fleet Boats."[9]

---

[8]   R. Doc. 108-2 at 16.

[9]   *Id.* at 10.

Marquette seeks to exclude portions of the testimony offered by Sargent.[10]   Marquette contends that Sargent is not qualified to provide an opinion on vessel operations by a fleet tug because he has no expertise in towing and fleeting operations.[11]   Further, Marquette argues that Sargent's opinion regarding the use of the barge ING 5534 is not based on any specific expertise and is not helpful because this barge did not even break away.[12]   Finally, Marquette argues that Sargent's opinions on fleet boat operations related to inspection and mooring "box barges" are neither relevant nor within the scope of his expertise.[13]

The Court finds that Sargent is sufficiently qualified to provide opinions on fleet boat operations.   Sargent has a degree in naval architecture and marine engineering and has decades of experience working in the industry.[14]   He is a governor of the Greater New Orleans Barge Fleeting Association, and has spoken to the association on fleet strength.[15]   In addition, Sargent published an article for the association discussing fleeter mooring

---

[10]   R. Doc. 108-1 at 1.

[11]   *Id.*

[12]   *Id.*

[13]   *Id.*

[14]   R. Doc. 108-2 at 16.

[15]   *Id.* at 16, 18.

problems.[16]  For the same reasons, the Court finds that Sargent's testimony on UBT's inspection and maintenance of its mooring system is within the scope of Sargent's expertise.  Further, this testimony is relevant to the issue of the cause of the failures of the mooring system of the barges at issue.  Sargent's testimony regarding the use of ING 5534 as a spar barge is also relevant because the configuration of the barges and their mode of attachment is relevant to the forces exerted on them.  Accordingly, Marquette's motion is DENIED.


## IV. Marquette and Beverley's Motion to Exclude the Testimony of Christopher Karentz

Christopher Karentz is Royal Caribbean's retained marine liability expert.  Karentz opines that the NAVIGATOR did not cause the breakaway at UBT's fleet, that the ALLISON S's damage could have been avoided had her crew moored in a different location and followed proper precautions, and that UBT's mooring system was not sufficient based on the history of breakaways and its noncompliance with Plaquemines Parish regulations as well as its United States Army Corps of Engineers ("USACE") permit.[17]

---

[16]     *Id.*

[17]     R. Doc. 111-2 at 32.

Marquette and Beverley seek to exclude the testimony of Karentz.[18] Marquette offers three grounds for excluding Karentz's report: (1) he offers opinions as to matters of common knowledge and not based on his expertise; (2) he speculates that based upon other incidents involving breakaways at the UBT facility, the barges at buoy 3(c) on January 26, 2013 were also improperly moored; and (3) his remaining theories and opinions are not helpful because they are based on other experts' findings and are not reliable.[19] Beverley moves to exclude Karentz's testimony as to the hydrodynamic effects of the NESTOS or NAVIGATOR because he is not an expert in marine hydrodynamics.[20]

**A. Reliance on Prior Breakaways**

As an initial matter, Marquette is wrong that Karentz bases his conclusion that UBT's barges were improperly moored solely on the existence of prior breakaways. Karentz cites UBT and Marquette's noncompliance with Plaquemines Parish regulations and UBT's USACE permit as evidence of improper mooring.[21] Specifically, Karentz relies on UBT and Marquette's failure to utilize a required

---

[18]   R. Docs. 111 and 114.

[19]   R. Doc. 111-1 at 1.

[20]   R. Doc. 114-1.

[21]   R. Doc. 111-2 at 19.

downstream mooring device.[22]  He also cites documents and other expert reports, which, taken together, tend to suggest the moorings were overloaded.[23]  These opinions are within his expertise and are helpful to the Court.  Karentz's opinion is therefore admissible to the extent that it relies on this evidence.

The Court accepts Marquette's argument that Karentz's conclusion that the barges were improperly moored and that UBT and Marquette disregarded safety operations, based on the history of prior breakaways, does not require expertise and is not helpful. The Court finds Karentz's reliance on past breakaways to conclude that the barges at buoy 3C were improperly moored or that UBT and Marquette disregarded safety operations does not reflect the use of any expertise, nor does it involve any analysis or other methodology.  Karentz does not even state the cause or circumstances of the past breakaways.  There is nothing linking his premise to his conclusion except the unsupported assumption that all of the past breakaways, which are not discussed at all, were caused by (unidentified) defects in safety operations or improper mooring.  Moreover, even if past breakaways were the result of lapsed safety operations or improper mooring, absent a demonstration of what caused them and some similarity to the facts here, Karentz's opinion is tantamount to suggesting that if UBT and

---

[22]     *Id.*

[23]     *Id.* at 29

9

Marquette were negligent before, they must be negligent again. This type of reasoning does not demonstrate how the past breakaways are relevant to this case.

Accordingly, to the extent Karentz relies on past breakaways to establish improper mooring or a disregard for safety operations, his testimony is excluded.  Karentz's opinions are otherwise admissible.  Marquette's motion is therefore GRANTED in part and DENIED in part.

### B. Hydrodynamic Effect of the NESTOS Versus the NAVIGATOR

Marquette also contends that Karentz's conclusion that the NAVIGATOR did not cause the breakaway is conclusory and not supported by a reliable method.[24]   Beverley attacks Karentz's conclusion that the NESTOS caused the accident as unsupported by hydrodynamics analysis or any reference to reliable scientific calculations or methodology.[25] Beverley also contends that Karentz is not qualified as an expert in this area because he has no experience or education in hydrodynamic modeling or analysis.[26]

As to Karentz's qualifications, he has a bachelor's degree in marine transportation and several decades of experience working in

---

[24]    R. Doc. 111-1 at 8.

[25]    R. Doc. 114-1 at 5.

[26]    *Id.* at 9.

10

the maritime industry.[27]   This includes employment as a captain, chief officer, and mate on commercial vessels.[28]   The Court finds that Karentz is sufficiently qualified to render opinions on the cause of the breakaway.

The Court also finds that Karentz's methodology is not so unreliable so as to warrant exclusion.  In reaching the conclusion that the NAVIGATOR did not cause the breakaway, Karentz, in his sworn declaration, relies on AIS data showing that the ALLISON S, then moored to UBT's barges, did not move before or after the NAVIGATOR's passing.[29]   Because the ALLISON S did not exhibit movement until the NESTOS's passing, Karentz concludes that the NESTOS's passage likely had a greater impact.[30]   Karentz also relies on his own experience with the displacement effects of box-shaped vessels and cruise lines to conclude that "[t]he NAVIGATOR offers little resistance to the water while traveling at any speed, as opposed to the NESTOS which travels through the water analagous to a brick due to the significant suction, surge, and wake resulting

---

[27]   R. Doc. 111-2 at 36-39.

[28]   *Id.* at 38.

[29]   R. Doc. 72-1 at 2.

[30]   *Id.* at 2-3.  *See also* R. Doc. 111-2 at 27 ("[B]ut it is clear from the AIS data that the surge created by the [NAVIGATOR] did not cause the UBT Block 3-C to breakaway.  If the [NAVIGATOR] had created a surge with sufficient force to push a block of 19 loaded barges upriver, surely the [ALLISON S], moored on the outboard side of the block, would have exhibited significant AIS movement even before the barges would have moved.").

from its deep draft and hull design."[31]   Finally, Karentz relies on the deposition testimony of Robert Johnson, the captain of the NESTOS at the time of the breakaway, that the NAVIGATOR had a "slight, slight wake," did not produce much of a surge, and glided on top.[32]   The Court finds that Karentz's opinion is sufficiently grounded in his training and experiential observation, as well as facts in the record.   Whether the Court ultimately accepts this opinion in lieu of more scientifically precise analysis is another question.   Beverley's motion is therefore DENIED.


## V. Marquette's Motion to Exclude Testimony on Causation by Jason Fernandes

Jason Fernandes is a surveyor retained by Royal Caribbean primarily for the purpose of evaluating the parties' damages claims.   While damages are the focus of Fernandes' report, he also opines that the NAVIGATOR had no role in the breakaway of the barges and of the tug ALLISON S.[33]

Marquette seeks to exclude the testimony of Fernandes to the extent he seeks to offer an opinion on causation of the breakaway.[34]

---

[31]   R. Doc. 72-1 at 7.  *See also* R. Doc. 111-2 at 24 (relying on the box-like shape of the NESTOS to conclude that its displacement effect when underway would likely be significantly more pronounced than that of the NAVIGATOR).

[32]   R. Doc. 72-1 at 6.

[33]   *Id.* at 6.

[34]   R. Doc. 112-1 at 1.

Marquette argues that these conclusions are outside the scope of Fernandes' expertise, are not helpful, and are cumulative of other evidence.[35]   Marquette also contends that Fernandes bases his conclusions on causation on hearsay statements.[36]

The Court excludes Fernandes' opinion on causation as unhelpful and cumulative.   Fernandes reviewed the statements of witnesses and reports of UBT and Slatten and proceeded to discount them as "unreliable."   Then he purportedly relied on the AIS recordings to issue the bald, unexplained conclusion that "those findings clearly demonstrate that the 'NAVIGATOR OF THE SEAS' had no role in the breakaway of the barges and of the tug 'ALLISON S.'"[37] Fernandes provides no explanation for this opinion.   Without an explanation, Fernandes provides the Court no basis to accord his opinion any validity.   As to Fernandes' musings about the reliability of witness testimony, these are credibility calls the Court can make without his assistance.   Further, Royal Caribbean already has an expert on the issue of causation and, therefore, Fernandes' testimony is unnecessarily cumulative.   For all these reasons, Fernandes' opinion on causation is excluded.   Accordingly, Marquette's motion is GRANTED.

---

[35]   *Id.* at 1.

[36]   R. Doc. 157 at 2.

[37]   R. Doc. 112-2 at 6.

**VI. Conclusion**

For the foregoing reasons, Marquette's motions are GRANTED in part and DENIED in part.  Beverley's motion is DENIED.


New Orleans, Louisiana, this  23rd  day of October, 2014.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE