UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SLATTEN, LLC, et al.                         CIVIL ACTION

VERSUS                                       NO: 13-673

ROYAL CARIBBEAN CRUISES LTD.,                SECTION: R(5)
et al.

## ORDER AND REASONS

Plaintiff Bouchard Transportation Co., Inc. moves for summary judgment against defendants Royal Caribbean Cruises Ltd. and United Bulk Terminals Davant, L.L.C., as well as third-party defendants Marquette Transportation Company Gulf-Inland, LLC, and Beverley Navigation, Inc. and Pleiades Shipping Agents, S.A. (collectively, "Beverley").[1]  Royal Caribbean joins Bouchard's motion in part.[2]

For the following reasons, the Court denies Bouchard and Royal Caribbean's motions.


## I. Background

This consolidated maritime action arises out of a breakaway incident on the lower Mississippi River in the early morning hours of January 26, 2013.  Before the breakaway, the tugboat ALLISON S was moored to a number of Marquette's barges at UBT's fleeting facility in Davant, Louisiana.  Sometime after 3:00 A.M., the barges and the ALLISON S broke loose from their mooring and drifted

---

[1]     R. Doc. 104.

[2]     R. Doc. 109.

downstream.  The ALLISON S allided with the anchored vessel HIGH STRENGTH, which caused  the ALLISON S to sustain damage and its crew to allegedly suffer personal injuries.  In addition, several of the breakaway barges struck and damaged the B. No. 275, an anchored barge belonging to Bouchard.

The parties dispute the cause of the breakaway.  Slatten, LLC, the owner of the ALLISON S, and Bisso Towboat Company, Inc., the owner *pro hac vice* of the ALLISON S (collectively, "Slatten"), commenced this action against defendant Royal Caribbean.[3]  Slatten alleges that on January 26, 2013 Royal Caribbean's cruise ship, the NAVIGATOR OF THE SEAS ("NAVIGATOR"), overtook the NESTOS, an oil tanker owned and/or operated by Beverley, in the Mississippi River in the area of UBT's fleeting facility.  Slatten contends that the NAVIGATOR traveled at a speed greater than 14 knots as it overtook the NESTOS and that the wake and suction that the NAVIGATOR generated as it passed the fleeting facility caused the breakaway of the ALLISON S and the barges.[4]

Royal Caribbean made UBT, Marquette and Beverley third-party defendants to Slatten's claims, under Federal Rule of Civil Procedure 14(c).[5]  Royal Caribbean alleges that the breakaway was caused by the negligence of UBT and/or Marquette in failing to

---

[3]    R. Doc. 1.

[4]    *Id.* at 3.

[5]    R. Docs. 10, 15.

2

provide adequate moorings to secure the fleet.[6]  It further argues that, to the extent that wake and suction generated by the NAVIGATOR contributed to the breakaway, Beverley, too, is liable, because wake and suction from the NESTOS, as well as "the actions of the NESTOS," were contributing causes.[7]

Bouchard filed a separate suit against Royal Caribbean and UBT, alleging liability for damage to its barge.[8]  The Court consolidated Bouchard's suit with Slatten's suit.[9]  Royal Caribbean then made Marquette, Slatten and Beverley third-party defendants to Bouchard's claims under Rule 14(c).[10]

Three crew members of the ALLISON S, Mark Blancq, Anthony Fortier, and Kirkland Hutson, intervened in the suit.[11]  They allege that Royal Caribbean is liable for injuries they suffered when the ALLISON S allided with the HIGH STRENGTH.[12]  Royal Caribbean made Slatten, UBT, Marquette and Beverley third-party defendants to the

---

[6]     R. Doc. 10 at 5-6.

[7]     *Id.* at 6-7.

[8]     *Bouchard Transportation Co., Inc. v. Royal Caribbean Cruises Ltd.*, No. 13-4975, R. Doc. 1.

[9]     R. Doc. 21.

[10]    R. Doc. 32 at 8-9.

[11]    R. Doc. 61.

[12]    *Id.*

crew members' claims under Rule 14(c).[13]

Beverley moved for summary judgment on all claims against it. The Court denied Beverley's motion on August 22, 2014, finding that genuine issues of material fact remained as to whether the NESTOS caused or contributed to the breakaway.[14]

Bouchard now moves for summary judgment.[15]  It argues that it is entitled to summary judgment on the issue of liability as to all of the defendants.[16]  Royal Caribbean joins Bouchard's motion to the extent it applies to UBT and Marquette, and otherwise opposes the motion.[17]  UBT, Marquette, and Beverley also oppose the motion.[18]

## II. Legal Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986);

---

[13]    R. Doc. 62 at 7-8.

[14]    R. Doc. 98.

[15]    R. Doc. 104.

[16]    R. Doc. 104-1 at 2.

[17]    R. Doc. 109.

[18]    While plaintiff-intervenors Blancq, Fortier, and Hutson purport to join any opposition to the extent it inures to their benefit, the Court finds that this statement is insufficient. *See* R. Doc. 121.  Plaintiff-intervenors cannot rely on the Court to determine what opposition arguments benefit their position.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-399 (5th Cir. 2008). The Court must draw reasonable inferences in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2738 (2d ed. 1983)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quotation marks removed). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party

will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.

The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *Id.; see also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (quoting *Celotex*, 477 U.S. at 322).

## III. Discussion

Bouchard contends that it is entitled to summary judgment against all defendants on the issue of liability, and that its involvement at trial should be limited to proving its damages.[19] Bouchard argues that defendants UBT, Marquette, Royal Caribbean, and Beverley should carry the burden of determining how fault is allocated. Bouchard relies on evidentiary presumptions of fault

---

[19]    R. Doc. 104-1 at 2.

and causation to establish the liability of the defendants. Royal Caribbean joins the motion to the extent it applies to UBT and Marquette, but opposes it to the extent Bouchard attempts to rely on presumptions as to its liability.[20] The parties opposing summary judgment do not dispute Bouchard's claim that it is free from fault, but argue that Bouchard must carry its burden to show liability. The Court finds that the evidence establishes a genuine issue for trial as to which, if any, of the defendants are liable to Bouchard, and therefore denies Bouchard and Royal Caribbean's motion.

## A. Maritime Negligence

A prima facie case of maritime negligence requires a showing that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by the plaintiff, and causation. *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000). Bouchard relies on presumptions created by the Louisiana Rule and the Pennsylvania Rule to establish the elements of fault and causation against the defendants. Bouchard argues that the Louisiana Rule's presumption of fault arises against UBT and Marquette because UBT's barges drifted into an allision with Bouchard's barge. Bouchard further argues that the Pennsylvania Rule's presumption of causation arises against UBT and Marquette

---

[20]    R. Doc. 109.

based on alleged violations of UBT's United States Army Corps of Engineers ("USACE") permit and Plaquemines Parish regulations.  As to Royal Caribbean and Beverley, Bouchard appears to neglect the issue of fault, but relies on alleged violations of Rule 6 of the Inland Rules in support of applying the Pennsylvania Rule's presumption on causation.

The Louisiana Rule creates a presumption of fault that shifts the burden of production and persuasion to a moving vessel that drifts into an allision with a stationary object.  *THE LOUISIANA*, 70 U.S. (3 Wall.) 164, 173 (1866); *Combo Maritime, Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 604 (5th Cir. 2010).  The presumption "must be properly confined to the issue of breach only -- not 'causation (either in fact or legal cause) or the percentages of fault assigned to the parties adjudged negligent.'" *Combo Maritime*, 615 F.3d at 605 (quoting *In re Mid-South Towing Co.*, 418 F.3d 526, 532 (5th Cir. 2005)).

Under the Pennsylvania Rule, *The S.S. Pennsylvania v. Troop*, 88 U.S. (19 Wall.) 125, 134 (1873), "a vessel in derogation of a statutory rule bears the burden of demonstrating that its fault could not have been the cause in fact of the casualty." *Mid-South Towing*, 418 F.3d at 533.  The rule creates a presumption "that a statutory violation by a party to a collision is a cause of the damage unless it is established that the violation could not have caused or contributed to the collision." *American River Transp.*

8

*Co. v. Kavo Kaliakra SS*, 148 F.3d 446, 449 (5th Cir. 1998).  The statutory violation must be shown by a preponderance of the evidence, *Skidmore v. Grueninger*, 506 F.2d 716, 722 (5th Cir. 1975), and the damage must be of a type that the statute was intended to prevent, *see Tokio Marine & Fire Ins. Co. v. FLORA MV*, 235 F.3d 963, 966 (5th Cir. 2001); *Hatt 65, LLC v. Kreitzberg*, 658 F.3d 1243, 1252 (11th Cir. 2011).  The presumption "applies only to violations of statutes that delineate a clear legal duty, not regulations that require judgment and assessment of a particular circumstance." *FLORA MV*, 235 F.3d at 966.

Evidentiary presumptions are "designed to fill a factual vacuum." *Mid-South Towing Co.*, 418 F.3d at 532 (internal quotation marks and citation omitted).  "Once evidence is presented ... presumptions become superfluous because the parties have introduced evidence to dispel the mysteries that gave rise to the presumptions." *Id.* at 531 (quoting *Rodi Yachts, Inc.*, 984 F.2d 880, 887 (7th Cir. 1993)); *see also In re Omega Protein, Inc.*, 548 F.3d 361, 368-69 (5th Cir. 2008).  With the presence of evidence in the record, "the need for presumptions evaporates." *Combo Maritime*, 615 F.3d at 607.  Accordingly, application of the presumptions is unnecessary in the absence of a factual void. *See Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transport*, 596 F.3d 357, 362 (6th Cir. 2010) ("But when 'the parties have introduced evidence to dispel the mysteries that gave rise to the

9

presumption,' the [presumption] has no factual void to fill.") (quoting *Mid-South Towing*, 418 F.3d at 531). Recently, several courts found application of evidentiary presumptions on the issues of both fault and causation unnecessary in the presence of evidence. *See, e.g.*, *St. James Stevedoring Partners, LLC v. Motion Navigation LTD.*, No. 13-541, 2014 WL 3892178, at *6-7 (E.D. La. Aug. 6, 2014) (finding application of the Oregon and Pennsylvania rules unnecessary where evidence was presented on the issues of fault and causation); *Virginia Dept. of Transp. v. Burton*, No. 2:11cv601, 2012 WL 2785900, at *4 (E.D. Va. July 6, 2012) (same).

Evidentiary presumptions are also inapplicable between co-defendants that raise conflicting presumptions. *Combo Maritime*, 615 F.3d at 606-08 ("If the two parties to a collision or allision suit each have a presumption of fault against them, then it is likely that the presumptions would merely cancel each other out.").

## B. Application

In its motion for summary judgment, Bouchard, joined by Royal Caribbean, argues that the Louisiana Rule's presumption of fault should be imposed against UBT and Marquette because a tier of barges from UBT's facility drifted into an allision with Bouchard's barge. Bouchard, again joined by Royal Caribbean, further argues that the Pennsylvania Rule's presumption of causation should be imposed against UBT and Marquette based on their alleged violations

of UBT's USACE permit and Plaquemines Parish regulations.[21]
Finally, Bouchard, relying on a misstatement of law, argues that
Royal Caribbean and Beverley are at fault,[22] and that the
Pennsylvania Rule creates a presumption of causation against both
parties based on alleged violations of Rule 6 of the Inland Rules.[23]

---

[21]   By not utilizing a downstream mooring device, Bouchard
contends UBT and Marquette violated UBT's USACE permit and Port
of Plaquemines Rule 34, sub rule 126, § 13, which both require an
upstream and a downstream mooring device.

[22]   Bouchard argues that "a Rule 6 violation would also
give rise to a Pennsylvania Rule presumption of fault against
NOTS and/or NESTOS." R. Doc. 104-1 at 10. Because the
Pennsylvania Rule creates a presumption of causation, not fault,
the Court does not consider this argument.

[23]   Rule 6 of the Inland Rules provides:

> Every vessel shall at all times proceed at a safe
> speed so that she can take proper and effective action
> to avoid collision and be stopped within a distance
> appropriate to the prevailing circumstances and
> conditions.
> In determining a safe speed the following factors
> shall be among those taken into account:
> (a) By all vessels:
>     (1) The state of visibility;
>     (2) The traffic density including
>     concentration of fishing vessels or any other
>     vessels;
>     (3) The maneuverability of the vessel with
>     special reference to stopping distance and
>     turning ability in the prevailing conditions;
>     (4) At night the presence of background light
>     such as from shores lights or from back
>     scatter of her own lights;
>     (5) The state of wind, sea, and current, and
>     the proximity of navigational hazards;
>     (6) The draft in relation to the available
>     depth water.
> (b) Additionally, by vessels with operational
> radar:

In response, UBT and Marquette introduce evidence to show they were not negligent. Specifically, the report of David Scruton concludes that UBT's fleet lines appeared to have been maintained in good operational condition, that Marquette conducted appropriate fleet checks and fleet watches, and that there was insufficient time for Marquette's vessels to take mitigating action.[24] Similarly, the report of Barnes Engineering Co. Inc. concludes that "a structural deficiency of [UBT's] fleet moorings did not contribute to the subject barge breakaway."[25]  UBT and Marquette

---

> (1) The characteristics, efficiency and limitations of radar equipment;
> (2) Any constraint imposed by the radar range scale in use;
> (3) The effect on radar detection of the sea state, weather, and other sources of interference;
> (4) The possibility that small vessels, ice and other floating objects may not be detected by radar at an adequate range;
> (5) The number, location, and movement of vessels detected by radar; and
> (6) The more exact assessment of the visibility that may be possible when radar is used to determine the range of vessels or other objects in the vicinity.

33 C.F.R. § 83.06.

[24]    R. Doc. 128-1 at 15. *See also* R. Doc. 126-2 at 35-50, Exhibit D, deposition of Paul Ruiz (noting no concerns regarding the condition of the lines securing UBT's fleet prior to the accident); R. Doc. 126-3 at 39-47, Exhibit G, deposition of Gerard Souvinette (same); R. Doc. 126-4 at 1-16, Exhibit H, deposition of Vernon Augustus (same); R. Doc. 126-4 at 17-31, Exhibit I, deposition of Sal Duhe (same).

[25]    R. Doc. 126-6 at Exhibit P.

also offer evidence tending to show that the NAVGIATOR caused the breakaway.[26]   While Bouchard relies almost exclusively on evidentiary presumptions, it does point to the deposition testimony of Richard Rosser, UBT's representative, to show that UBT and Marquette were negligent in failing to position at least one fleet boat at the bottom of the UBT lower fleet,[27] and by not utilizing two mooring points as required by UBT's USACE permit and Plaquemines Parish regulations.[28]

Beverley also introduces evidence to show that it was not negligent.  Specifically, it offers the report of Maurice Ryan to show that the breakaway was caused by UBT's failure to comply with its USACE permit and Plaquemines Parish regulations, Marquette's failure to monitor the fleet, and the NAVIGATOR's maneuvering to overtake the NESTOS.[29]  Beverley also relies on the report of Coast & Harbor Engineering, which notes that "[a]ssuming proper mooring

---

[26]   *See* R. Doc. 126-5 at Exhibit M, expert report of Prentice Strong ("[T]he cause of the barges breaking away ... in the UBT lower fleeting area is a result of the hydrodynamic forces imparted by the [NAVIGATOR] as she overtook the NESTOS in the coal hole area."); R. Doc. 126-5 at Exhibit N, expert report of Arthur Darden (The barge breakaway "was caused by the surge, suction and/or waves, created by the" NAVIGATOR.); R. Doc. 126-6 at Exhibit P, expert report of Barnes Engineering Co. (The barges "broke free from their mooring as a result of hydrodynamic forced created by the NAVIGATOR....").

[27]   R. Doc. 104-2 at 27-30, Exhibit B, deposition of Richard Rosser.

[28]   *Id.* at 15-27, Exhibit B, deposition of Richard Rosser.

[29]   R. Doc. 129-1 at 15, expert report of Maurice Ryan.

practices were utilized, it is likely that no mooring problems would have occurred during a [NESTOS]-only passing event given that ship-induced loads would have been one order of magnitude lower."[30] Bouchard offers no evidence against Beverley except for citing Beverley's "potential" violation of Rule 6 of the Inland Rules.

Finally, Royal Caribbean introduces evidence to show that it was not at fault. First, the statement of Christopher Karentz concludes that the wake and suction from the NESTOS was a more likely cause of the breakaway than wake and suction from the NAVIGATOR.[31] Second, Robert Johnson, the captain of the NESTOS at the time of the breakaway, states that the NAVIGATOR "has a slight, slight wake" and does not generate much of a surge,[32] and that the NAVIGATOR passed UBT's facility at a safe speed and distance.[33] Finally, Kirkland Hutson,[34] the ALLISON S's deckhand "on watch," and Jamason Foster,[35] Bouchard's mate, both stated that they did not observe anything out of the ordinary at the time the NAVIGATOR passed. Bouchard offers no evidence against Royal Caribbean except for citing Royal Caribbean's "potential" violation of Rule 6 of the

---

[30]   R. Doc. 129-2 at 5.

[31]   R. Doc. 72-1 at 2.

[32]   R. Doc. 72-9 at 9.

[33]   R. Doc. 122-6.

[34]   R. Doc. 122-2.

[35]   R. Doc. 122-3.

Inland Rules.

This multi-party action has seen extensive discovery and evidence produced by various parties.   There is substantial evidence in the record, albeit contested, on the liabilities of all defendants.   The Court, having thoroughly examined the record, concludes that application of the evidentiary presumptions advocated by Bouchard, and, to some extent, Royal Caribbean, is unnecessary.   The record at trial will contain sufficient evidence on which the Court, as the finder of fact, can determine the liabilities of the parties.   *See In re Mid-South Towing*, 418 F.3d at 531.

Moreover, other factors counsel against issuing summary judgment based on the application of these presumptions.   First, evidentiary presumptions are inapplicable between co-defendants where conflicting presumptions exist, and, therefore, Royal Caribbean cannot rely on evidentiary presumptions against UBT and Marquette.[36]   *See Combo Maritime*, 615 F.3d at 606-08.   Second, it is unclear if violations of any of the cited rules and regulations give rise to a Pennsylvania Rule presumption.   Bouchard cites UBT and Marquette's alleged violation of UBT's USACE permit and a

---

[36]   Here, Royal Caribbean advocates for the application of the Louisiana Rule's presumption of fault and the Pennsylvania Rule's presumption of causation against UBT and Marquette. Likewise, UBT and Marquette could rely on the presumption of fault placed on a passing vessel when its wake causes damage to a properly moored vessel. *See West India Fruit & Steamship Co. v. Raymond*, 190 F.2d 673, 674 (5th Cir. 1951).

Plaquemines Parish regulation.   There is a question of fact, however, as to the requirements of the USACE permit, and UBT and Marquette contend that the Plaquemines Parish regulation is inapplicable as preempted, an issue that has not been adequately briefed on this motion.   Further, the Pennsylvania Rule's presumption "applies only to violations of statutes that delineate a clear legal duty, not regulations that require judgment and assessment of a particular circumstance." *FLORA MV*, 235 F.3d at 966.   Rule 6 of the Inland Rules clearly requires judgment and assessment of particular circumstances, as evidenced by the twelve factors it requires to be considered under "prevailing circumstances and conditions." 33. C.F.R. § 83.06.   Application of the Pennsylvania Rule, therefore, cannot arise from Royal Caribbean and Beverley's alleged Rule 6 violations.[37]   The Pennsylvania Rule is also inapplicable to the alleged Rule 6 violations because Bouchard fails to prove the violations by a preponderance of the evidence.[38]  *See Skidmore*, 506 F.2d at 722.

---

[37]   While the Court does not apply the Pennsylvania Rule based on the alleged Rule 6 violations, the Court recognizes that the alleged Rule 6 violations may still provide a basis for showing that Royal Caribbean and Beverley were negligent. *See* 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 14-2 (5th ed. 2013) (noting that violation of a safety statute can provide a basis for a negligence determination).

[38]   The Court notes, however, the Fifth Circuit's guidance that Rule 6 was intended to prevent both collisions and adverse effects on other vessels resulting from high speeds. *Stolt Achievement, Ltd. v. Dredge B.E. LINDHOLM*, 447 F.3d 360, 366 (5th Cir. 2006) ("[A] speed that allows a vessel to 'take proper and

Absent evidentiary presumptions, Bouchard fails to offer evidence that demonstrates that no genuine issues of material fact remain for trial. All defendants introduce evidence tending to show that they, individually, are not responsible for Bouchard's damages, and, in most cases, that one or more of the other defendants are responsible. While the defendants continue to point their fingers at each other, this does not relieve Bouchard of its burden to affirmatively prove that one or more of the parties is liable.

Accordingly, Bouchard and Royal Caribbean's motions for summary judgment are DENIED.


**IV. Conclusion**

For the foregoing reasons, the Court DENIES Bouchard and Royal Caribbean's motions for summary judgment.


New Orleans, Louisiana, this __30th__ day of October, 2014.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

effective action to avoid collision and be stopped within a distance appropriate to prevailing circumstances,' as required by Inland Rule 6, is also a speed 'that does not have an adverse effect on other vessels in the area'....") (internal citation omitted).