UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SLATTEN, LLC, et al.                          CIVIL ACTION

VERSUS                                        NO: 13-673

ROYAL CARIBBEAN CRUISES LTD.,                 SECTION: R(5)
et al.

**<u>ORDER AND REASONS</u>**

Before the Court is Marquette Transportation Company Gulf-Inland, L.L.C. and United Bulk Terminals Davant, LLC's ("UBT") motion to exclude evidence of prior breakaways at UBT's facility. For the following reasons, the motion is granted in part and denied in part.

**I. Background**

This consolidated maritime action arises out of a breakaway incident on the lower Mississippi River, the details of which are discussed elsewhere.[1]  Marquette and UBT now seek to exclude evidence of prior and subsequent breakaways occurring at UBT's facility on February 28, 2008, March 3, 2012, April 16, 2012, and April 15, 2013.

---

[1]   *See* R. Doc. 98.

## II. Discussion

Marquette and UBT contend that any evidence of prior and subsequent breakaways at UBT's fleeting facility is irrelevant under Federal Rule of Evidence 401 or unduly prejudicial under Federal Rule of Evidence 403.[2] Marquette argues that this evidence is not relevant under Rule 401 because it neither owned nor operated the fleet boats at the time of the prior breakaways, and because the breakaways are not substantially similar to the one at issue. Royal Caribbean and Beverley assert that the prior and subsequent accidents are substantially similar to the one at issue, and that they are relevant to UBT and Marquette's failure to comply with UBT's United States Army Corps of Engineers ("USACE") permit, relevant regulations, industry standards, and good maritime practices.[3] In the alternative, Royal Caribbean and Beverley argue that the prior and subsequent accidents are relevant to UBT and Marquette's notice that the mooring system was unable to withstand the passage of deep draft ships.[4]

### A. Legal Standard

Under the Federal Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable

---

[2]   R. Doc. 177.

[3]   R. Doc. 197 at 2.

[4]   *Id.* at 1-2.

than it would be without the evidence[] and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. All relevant evidence is admissible, unless otherwise proscribed by law. Fed. R. Evid. 402. Evidence that is not relevant is not admissible. *Id.* Evidence also may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

The Fifth Circuit instructs that "[w]hen evidence of other accidents or occurrences is offered for any purpose other than to show notice, the proponent of that evidence must show that the facts and circumstances of the other accidents or occurrences are 'closely similarly' to the facts and circumstances at issue." *Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993) (citing *McGonigal v. Gearhart Indus., Inc.*, 851 F.2d 774, 778 (5th Cir. 1988); *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1082-83 (5th Cir. 1986)). This is also referred to as the "substantially similar" standard. *See Underwriters at Lloyd's London v. OSCA, Inc.*, Nos. 03-20398, 03-20817, 03-21021, 2006 WL 941794, at *7 (5th Cir. April 12, 2006). Where prior accidents are introduced to show notice, such evidence is permitted if there is "reasonable similarity" between the accidents. *Johnson*, 988 F.2d at 580. Once reasonable similarity is shown, differences in the

surrounding circumstances go to the weight, not the admissibility, of the evidence. *Jackson*, 788 F.2d at 1082. Even when substantial similarity is established, the district court retains "broad discretion to exclude such evidence under Rule 403...." *Johnson*, 988 F.2d at 580.

### B. Prior Breakaways

Royal Caribbean and Beverley bear the burden of establishing the similarity of prior and subsequent breakaways to the breakaway at issue. *See BP Exploration & Prod., Inc. v. Callidus Techs., L.L.C.*, No.Civ.A. 02-2318, 2003 WL 1797892, at *1 (E.D. La. April 3, 2003). They seek admission of evidence regarding four separate breakaways at UBT's facility occurring on February 28, 2008, March 3, 2012, April 16, 2012, and April 15, 2013, respectively.

#### 1. March 3, 2012 and April 16, 2012 Breakaways

The March 3, 2012 breakaway occurred at 2:00 A.M. when the wake of the cruise ship VOYAGER OF THE SEAS, while traveling northbound at 12.2 to 12.4 knots, broke out 22 barges from the 3B buoy of UBT's lower fleet due to broken lines.[5] The VOYAGER OF THE SEAS is apparently nearly identical to the NAVIGATOR.[6] The April

---

[5] *Id.* at 4-5.

[6] *Id.* at 5; *see also* R. Doc. 197-4 at 2, deposition of Captain Thordur Thorsson (noting that the VOYAGER OF THE SEAS and the NAVIGATOR "are identical").

16, 2012 breakaway occurred at 3:45 A.M. when the wake of the cruise ship CARNIVAL ELATION, traveling northbound at 10.7 to 11.5 knots, broke out 28 barges from the 3A buoy of UBT's lower fleet.[7] Marquette points out that barges at the 3A buoy are also moored to a series of pilings, unlike the barges that broke free in this case, which are moored to the 3C buoy. The breakaway at issue in this case occurred shortly after 3:00 A.M., allegedly after the NAVIGATOR, traveling at 14 knots, broke out 18 barges from the 3C buoy of UBT's lower fleet.

Despite these similarities, Royal Caribbean has not demonstrated that the cruise ships passed UBT's fleet from a similar distance or whether the river and weather conditions were similar to those in this litigation. Further, Royal Caribbean fails to point with specificity to a defect in the mooring system that it contends caused all three breakaways. As a result, Royal Caribbean fails to establish that substantial similarity exists between these breakaways and the breakaways at issue. Still, the Court finds that reasonable similarity exists between the breakaways such that evidence of the March 3 and April 16, 2012 breakaways is admissible to show that UBT and Marquette were on notice that the mooring system was unable to withstand the passage of deep draft ships. Indeed, all three breakaways involved cruise ships of similar size traveling northbound on the Mississippi River

---

[7] R. Doc. 197 at 5-6.

in excess of 10 knots resulting in the breakaway of at least 18 barges from UBT's lower fleet in the early morning hours.

The Court notes that Marquette did not operate UBT's fleeting facility until June 2012.[8]  Before this, UBT operated the facility itself.[9]  Marquette contends that the accidents before June 2012 should not be admissible against it.  Royal Caribbean, in response, argues that because Marquette hired many of the same employees that previously operated the UBT fleet, that the employees' knowledge should be imputed to Marquette.

The Restatement (Third) of Agency provides that "[w]hen an agent is aware of a fact at the time of taking authorized action on behalf of a principal and the fact is material to the agent's duties to the principal, notice of the fact is imputed to the principal although the agent learned the fact prior to the agent's relationship with the principal, whether through formal education, prior work, or otherwise."  Restatement (Third) of Agency § 5.03, cmt. e.  "An agent brings the totality of relevant information that the agent then knows to the relationship with a particular principal."  *Id.*  Here, Royal Caribbean contends that Marquette hired and commissioned the same captains, crew, and fleet boats as those originally employed by UBT and its predecessor Electro Coal. Specifically, Royal Caribbean points to Captains Paul Ruiz and

---

[8]   *Id.* at 11-12.

[9]   *Id.* at 12.

Gerard Souvinette, who it contends were aware of the history of breakaways. Marquette does not contest this point and offers no information tending to show that the employees it hired were unaware of past breakaways at UBT's facility, or that it was itself unaware of the past breakaways. Further, Marquette operated the facility on behalf of UBT, and there is no question that UBT was aware of the earlier breakaways. As a result, Marquette is deemed to have had knowledge of the prior breakaways, and this knowledge is admissible against it to show notice.

### 2. February 28, 2008 and April 15, 2013 Breakaways

The February 28, 2008 breakaway apparently occurred when the cruise ship, the FANTASY, traveling at approximately 12.5 knots, allegedly broke out a number of barges in UBT's lower tier.[10] This breakaway is not relevant because it is not close enough in time to the breakaway at issue. Apparently, changes were made to the mooring facility after this event, the nature of which the Court cannot determine from the record. The evidence of the February 28, 2008 breakaway is therefore excluded.

The April 15, 2013 breakaway occurred at 3:00 A.M., after the passing of a crude oil tanker, the M/T SAN SABA, which allegedly broke out 44 barges from the 1A, 3A, and 3B barge blocks located in

---

[10]   *Id.* at 7.

UBT's lower fleet.[11]  While Royal Caribbean contends that the M/T SAN SABA is similar to the NESTOS, the crude oil tanker relevant to this litigation, it provides no support for this contention.  The only information Royal Caribbean provides to show similarity between the breakaways is the complaint UBT filed.  Royal Caribbean has failed to show that sufficient similarity exists.  Further, this subsequent event is irrelevant to notice.  The evidence of the April 15, 2013 accident is therefore excluded.

Accordingly, UBT and Marquette's motion is granted in part and denied in part.

### III. Conclusion

For the foregoing reasons, UBT and Marquette's motion is GRANTED in part and DENIED in part.

New Orleans, Louisiana, this __31st__ day of October, 2014.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[11]    *Id.* at 9.